**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
PAUL FOGLEMAN,                    )
                                  )
              Plaintiff,          )
                                  )
      v.                          )        1:19CV78
                                  )
ANDREW M. SAUL,                   )
Commissioner of Social            )
Security,[1]                      )
                                  )
              Defendant.          )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Paul Fogleman, brought this action pursuant to the

Social Security Act (the "Act") to obtain judicial review of a

final decision of Defendant, the Commissioner of Social Security,

denying Plaintiff's claim for Disability Insurance Benefits

("DIB"). (Docket Entry 1.) Defendant has filed the certified

administrative record (Docket Entry 6 (cited herein as "Tr. __")),

and both parties have moved for judgment (Docket Entries 9, 11; see

also Docket Entry 10 (Plaintiff's Memorandum); Docket Entry 12

(Defendant's Memorandum); (Docket Entry 13 (Plaintiff's Reply)).

For the reasons that follow, the Court should remand this matter

for further administrative proceedings.

_____

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of
Social Security on June 4, 2019, and he took the oath of office on June 17, 2019.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul
should be substituted for Nancy A. Berryhill as the Defendant in this suit.
Neither the Court nor the parties need take any further action to continue this
suit by reason of the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of October 1, 2011.  (Tr. 176-77.)  Upon denial of that application initially (Tr. 70-82, 96, 113-16) and on reconsideration (Tr. 97-112, 118-21), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 122).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 26-69.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 10-22.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6), and Plaintiff filed an action in this Court seeking judicial review of the Commissioner's final decision, Fogleman v. Berryhill, No. 1:16CV913, Docket Entry 2 (M.D.N.C. July 7, 2016).  Pursuant to Defendant's Uncontested Motion to Remand under Sentence Four of 42 U.S.C. § 405(g), see Fogleman, Docket Entry 14 (Apr. 3, 2017), the Court remanded the matter for further administrative proceedings, including evaluation of Plaintiff's mental impairments, as well as reevaluation of Plaintiff's residual functional capacity ("RFC") and the Department of Veterans Affairs' ("VA") disability rating (Tr. 496-99).  In turn, the Appeals Council remanded the matter back to the ALJ for further administrative proceedings consistent with the Court's order.  (Tr. 502-08.)

The ALJ held a second hearing, attended by Plaintiff, his attorney, and a VE (Tr. 418-70).  The ALJ thereafter determined

that Plaintiff did not meet the qualifications for disability under the Act.  (Tr. 396-412.)  Plaintiff then filed the instant action seeking judicial review of the ALJ's decision in this Court.[2]

In rendering that decision, the ALJ made the following findings:

1.    [Plaintiff] last met the insured status requirements of the . . . Act on June 30, 2015.

2.    [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of October 1, 2011 through his date last insured [("DLI")] of June 30, 2015.

3.    Through the [DLI], [Plaintiff] had the following severe impairments: shoulder arthropathy; post-traumatic stress disorder [("PTSD")]; anxiety disorder; and alcohol use disorder, in remission.

. . .

4.    Through the [DLI], [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    . . . [T]hrough the [DLI], [Plaintiff] had the [RFC] to perform medium work . . . except that he can occasionally reach overhead with his dominant upper extremity.  He can understand, recall, and carry out simple, routine tasks, involving no more than simple,

_____

[2]  "[W]hen a case is remanded by a [f]ederal court for further consideration, the decision of the [ALJ] will become the final decision of the Commissioner after remand on [a claimant's] case unless the Appeals Council assumes jurisdiction of the case.  The Appeals Council may assume jurisdiction based on written exceptions to the decision of the [ALJ] which [a claimant] file[s] with the Appeals Council or based on its authority . . . to assume jurisdiction of [a claimant's] case even though no written exceptions have been filed."  20 C.F.R. § 404.984.  Here, the record reflects neither that Plaintiff filed written exceptions to the ALJ's decision with the Appeals Council nor that the Appeals Council assumed jurisdiction of his case under its own authority.

3

short instructions and simple, work-related decisions with few workplace changes. He can sustain his concentration and attention for two hours at a time. He can have occasional interaction with supervisors, but no interaction with coworkers or the public. He cannot perform work at a fixed production rate or pace.

. . .

6. Through the [DLI], [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the [DLI], considering [Plaintiff's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from October 1, 2011, the alleged onset date, through June 30, 2015, the [DLI].

(Tr. 401-11 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

4

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to

5

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to identify and obtain a reasonable explanation for the apparent conflict between the testimony of the VE and the [Dictionary of Occupational Titles ('DOT')] regarding the reasoning requirements of the jobs cited at [s]tep [f]ive of the SEP" (Docket Entry 10 at 5 (bold font and single-spacing omitted));

2) "[t]he ALJ erred by failing to identify and obtain a reasonable explanation for the apparent conflict between the testimony of the VE and the [DOT] regarding the reaching requirements of the jobs cited at [s]tep [f]ive of the SEP" (id. at 7 (bold font and single-spacing omitted)); and

3) "[t]he ALJ erred by failing to perform a function[-]by[-]function assessment of the contested functions of reaching and lifting when assessing the RFC" (id. at 10 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (See Docket Entry 12 at 9-22.)

---

at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

9

## 1. Conflict Between VE's Testimony and <u>DOT</u> Regarding Reasoning Development Level

In Plaintiff's first assignment of error, he maintains that "[t]he ALJ . . . fail[ed] to identify and obtain a reasonable explanation for the apparent conflict between the testimony of the VE and the [<u>DOT</u>] regarding the reasoning requirements of the jobs [relied upon by the ALJ] at [s]tep [f]ive of the SEP" in violation of Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), and <u>Pearson v. Colvin</u>, 810 F.3d 204 (4th Cir. 2015). (Docket Entry 10 at 5 (bold font and single-spacing omitted).) In particular, Plaintiff points out that all three jobs cited by the VE (and adopted by the ALJ at step five) involve a Reasoning Development Level ("RDL") of 2, (A) which "requires an individual to be capable of 'carry[ing] out <u>detailed</u> but uninvolved written or oral instructions'" (<u>id.</u> (quoting <u>DOT</u>, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development"), 1991 WL 688702 (emphasis added), and citing <u>DOT</u>, No. 311.677-018 ("Dining Room Attendant"), 1991 WL (G.P.O. 4th ed. rev. 1991), <u>DOT</u>, No. 381.687-018 ("Cleaner, Industrial"), 1991 WL 673258, and <u>DOT</u>, No. 920.587-018 ("Packager, Hand"), 1991 WL 687916)), and (B) which conflicts with the VE's testimony that an individual limited to "'simple, short instructions'" could perform those jobs (<u>id.</u>

(quoting Tr. 404, and referencing Tr. 462-63)).[7] Plaintiff asserts that the United States Court of Appeals for the Fourth Circuit has held that an apparent conflict exists between the DOT's classification of jobs as involving detailed instructions (RDL 2) and a VE's testimony that an individual restricted to short, simple instructions could perform those jobs. (Id. at 6 (citing Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019).) Plaintiff's contentions have merit and warrant remand.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus,

---

[7] The VE and the ALJ refer to the "Cleaner, Industrial" job in the DOT as "Janitor," the "Dining Room Attendant" job in the DOT as "Dish Washer," and the "Packager, Hand" job in the DOT as "Warehouse Worker." (See Tr. 411, 463.) For ease of reading, this Recommendation will refer to those jobs by the names used by the VE and the ALJ.

"[t]he ALJ <u>independently</u> must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [<u>DOT</u>]," <u>id.</u> at 209 (emphasis added); <u>see also id.</u> (rejecting the Commissioner's argument that "apparent" conflict meant only "obvious" one).

Here, the ALJ queried the VE whether an individual limited to "medium work, except that the individual is able to understand, recall, and carry out simple, routine tasks involving no more than simple, short instructions, and simple work-related decisions with few workplace changes; and is able to sustain concentration and attention for two hours at a time . . . is unable to interact with the general public, and unable to interact with coworkers, but can occasionally interact with supervisors . . . [and] should have no work at a fixed production rate or pace" could perform Plaintiff's past relevant work ("PRW"). (Tr. 462-63.) In response, the VE opined that such an individual could not perform Plaintiff's PRW but could perform other jobs, such as Janitor, Dishwasher, and Warehouse Worker. (Tr. 463.) The VE then provided the corresponding <u>DOT</u> codes for the jobs, as well as their incidence in the national economy. (<u>Id.</u>)

The ALJ subsequently adopted the VE's testimony as to Plaintiff's ability to perform the three jobs in question:

> . . . To determine the extent to which [the RFC's] limitations erode the unskilled medium occupational base, through the [DLI], I asked the [VE] whether jobs existed

12

in the national economy for an individual with
[Plaintiff's] age, education, work experience, and [RFC].
The [VE] testified that given all these factors the
individual would have been able to perform the
requirements of representative occupations such as a
[J]anitor, DOT #381.687-018, which is medium in exertion,
has an SVP of 2 (unskilled), and represents more than
500,000 jobs nationally; a [D]ish [W]asher, DOT #311.677-
018, which is medium in exertion, has an SVP of 2, and
represents more than 300,000 jobs nationally; and a
[W]arehouse [W]orker, DOT #920.587-018, which is medium
in exertion, has an SVP of 2, and represents more than
300,000 jobs nationally.

Pursuant to SSR 00-04p, I have determined that the [VE's]
testimony is consistent with the information contained in
the [DOT].

Based on the testimony of the [VE], I conclude that,
through the [DLI], considering [Plaintiff's] age,
education, work experience, and [RFC], [Plaintiff] was
capable of making a successful adjustment to other work
that existed in significant numbers in the national
economy. A finding of "not disabled" is therefore
appropriate . . . .

(Tr. 411 (internal citation omitted).) Plaintiff contends that an
apparent, unresolved conflict exists concerning all three of the
cited jobs. (See Docket Entry 10 at 5-7.)

As argued by Plaintiff, the Fourth Circuit indeed has held
that jobs involving an RDL of 2 apparently conflict with a
limitation to "short, simple instructions," because RDL 2 entails
"the ability to carry out detailed but uninvolved written or oral
instructions." Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir.
2019) (emphasis added). In that regard, the Fourth Circuit noted:

We believe that [the plaintiff], being limited to short,
simple instructions, may not be able to carry out
detailed but uninvolved instructions. This is not a

13

categorical rule – some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved. Even so, the conflict between [the plaintiff's] limitation to short, simple instructions and the VE's testimony that [the plaintiff] could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in Pearson. Since we held that an apparent conflict existed in Pearson, we are satisfied that one exists in this case, too. We remand so that the ALJ can resolve the conflict in accordance with the [SSA]'s regulations.

Id. (internal footnote omitted); see also Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019) (finding no inconsistency between the plaintiff's limitation to the "simple, routine[,] repetitive tasks of unskilled work" and "[RDL] 2's notions of 'detailed but uninvolved . . . instructions,'" and noting that "key difference [wa]s that [the plaintiff in Thomas] was limited to 'short' instructions[, which wa]s inconsistent with 'detailed' because detail and length are highly correlated").

In light of Thomas, the ALJ here erred by failing to identify and resolve the apparent conflict between the DOT's assignment of RDL 2 to the jobs of Janitor, Dish Washer, and Warehouse Worker, and the VE's testimony that an individual could perform those jobs if limited to "simple, short instructions" (Tr. 463).

Defendant contends that, in "stark contrast" to Thomas (Docket Entry 12 at 11), the VE here resolved any apparent conflict between the cited jobs and the DOT by testifying that the DOT classifies those jobs as "'unskilled,'" such that they require "'little or no judgment to do simple duties that can be learned on the job in a

14

short period of time'" (id. at 12 (quoting Tr. 463, and citing 20 C.F.R. § 404.1568(a))). Thus, Defendant argues, "regardless of the DOT reasoning level classification," a hypothetical person with Plaintiff's limitation to simple, short instructions could still perform those jobs. (Id.)

Defendant's argument fails because, as recognized by Plaintiff (see Docket Entry 13 at 1-2), the DOT classifies the jobs at issue in Thomas as involving Specific Vocational Preparation ("SVP") 2, see Thomas, 916 F.3d at 314; see also DOT, No. 209.587-034 ("Marker"), 1991 WL 671802; DOT, No. 727.687-054 ("Final Inspector"), 1991 WL 679672; DOT, No. 209.667-014 ("Order Caller"), 1991 WL 671807, and jobs involving SVP 2 equate to unskilled work, see SSR 00-4p, 2000 WL 1898704, at *3 (citing 20 C.F.R. § 404.1568). Therefore, under the implicit reasoning of Thomas, the mere fact that the VE identified all three jobs as "unskilled" does not resolve the apparent conflict between the jobs' reasoning level and Plaintiff's restriction to simple, short instructions. Notably, the ALJ made no other attempt to resolve this apparent conflict, either in his examination of the VE or in the decision itself. (See Tr. 411, 462-63.)

Defendant next asserts that "Plaintiff cannot show any harmful error [] because overwhelming evidence in the record supports the ALJ's conclusion that [Plaintiff] could meet the mental demands of simple, routine, unskilled work and follow 'detailed but uninvolved

15

instructions.'"   (Docket Entry 12 at 13 (citing Tr. 403-11).)
Defendant points out that Plaintiff "had a high school diploma and
vocational training as an auto diesel mechanic" and "successfully
performed" his past relevant work "for 26 years . . . and [] only
stopped working to retire and travel after the company that
supplied him with chickens went out of business." (Id. (citing Tr.
209, 403, 423, 437-38, 608-09, 620).)   In addition, Defendant
points to Plaintiff's "generally normal mental status examinations"
and only "'mild to moderate'" memory problems (id. (citing Tr. 288,
312, 350, 409, 727, 730, 770)), as well as his abilities to "pay
bills, count change, make simple meals, mow the lawn, shop in
stores, travel to his mountain home, care for himself
independently, and help with household chores" (id. at 14 (citing
Tr. 205-08, 315, 403-04)).   Defendant thus argues that the jobs
cited by the VE "fell comfortably within Plaintiff's mental
functional capacity." (Id. (quoting Keller v. Berryhill, 754 F.
App'x 193, 199 (4th Cir. 2018), for proposition that, "where
claimant can 'actually perform' the occupations identified by the
[VE], any error related to a conflict between the [DOT] and the
[VE's] testimony is harmless").)   Defendant's argument fails for
two reasons.

    First, Defendant overlooks the fact that the ALJ assigned
"partial weight" to the opinions of the initial-level state agency
psychological consultant (Tr. 408), who opined that Plaintiff

16

experienced "[m]oderate[] limitat[ion]" (Tr. 77) in his ability to understand, remember, and carry out <u>detailed</u> instructions (<u>see</u> Tr. 78 (emphasis added)) and expressly found that Plaintiff "would have <u>difficulty</u> understanding and remembering [such] instructions" (<u>id.</u> (emphasis added)). Notably, the consultant believed that Plaintiff could maintain his concentration well enough to perform only "<u>two-step</u> tasks." (<u>Id.</u>) The ALJ did not report disagreement with any of those opinions. (<u>See</u> Tr. 408.)

Second, Defendant overstates the holding in <u>Keller</u>. The <u>Keller</u> court did <u>not</u> hold that, where a claimant can "'actually perform'" the jobs in question, any error related to an apparent, unresolved conflict between the VE and the <u>DOT</u> qualifies as harmless (Docket Entry 12 at 14 (quoting <u>Keller</u>, 754 F. App'x at 199)). In actuality, the court in <u>Keller</u> merely noted that, in finding that an <u>apparent</u>, unresolved conflict existed between jobs involving RDL 3 and a restriction to simple instructions, the court neither found the existence of an <u>actual</u> conflict, nor that the plaintiff could not "actually perform" the jobs in question. <u>Keller</u>, 754 F. App'x at 199. Moreover, although <u>Keller</u> acknowledged that federal courts generally "appl[y] the harmless error doctrine in reviewing a decision of the Commissioner denying a benefits claim," <u>Keller</u>, 754 F. App'x at 199 (citing <u>Patterson v. Commissioner of Soc. Sec.</u>, 846 F.3d 656, 658 (4th Cir. 2017)), <u>Keller</u> expressly recognized that an unresolved, apparent conflict

between a VE's testimony and the <u>DOT</u> <u>precludes</u> application of the harmless error doctrine, <u>id.</u> (citing <u>Pearson</u>, 810 F.3d at 210).

In sum, because an apparent, unresolved conflict exists between the VE's testimony and the <u>DOT</u> with respect to all three jobs relied upon by the ALJ, the Commissioner has failed to carry his burden at step five of the SEP, warranting remand.

## 2. **Conflict Between VE's Testimony and <u>DOT</u> Regarding Reaching**

In Plaintiff's second issue on review, he asserts that the ALJ erred by failing to resolve another apparent conflict between the VE's testimony and the <u>DOT</u> in violation of Social Security Ruling 00-4p and <u>Pearson</u>. (<u>See</u> Docket Entry 10 at 7-10.) More specifically, Plaintiff maintains that "[t]he ALJ erred by failing to identify and obtain a reasonable explanation for the apparent conflict between the testimony of the VE and the [<u>DOT</u>] regarding the reaching requirements of the jobs [relied upon by the ALJ] at [s]tep [f]ive of the SEP." (<u>Id.</u> at 7 (bold font and single-spacing omitted).) In that regard, Plaintiff argues that the <u>DOT</u>'s job descriptions for all three of the jobs in question reflect either <u>frequent</u> or <u>constant</u> reaching (<u>id.</u> at 7 (citing <u>DOT</u>, No. 381.687-018 ("Cleaner, Industrial"), 1991 WL 673258 ("Reaching: Frequently - Exists from 1/3 to 2/3 of the time"), <u>DOT</u>, No. 311.677-018 ("Dining Room Attendant"), 1991 WL 672696 ("Reaching: Constantly - Exists 2/3 or more of the time"), and <u>DOT</u>, No. 920.587-018 ("Packager, Hand"), 1991 WL 687916 ("Reaching: Constantly - Exists

18

2/3 or more of the time")), which conflicts with the VE's testimony that an individual limited to only _occasional_ overhead reaching with the dominant arm could perform those jobs (_see_ _id._ at 7-8 (referencing Tr. 463). Plaintiff further maintains that the Fourth Circuit in _Pearson_ found that same conflict "apparent" and remanded for the ALJ to resolve it. (_Id._ at 8-10 (citing _Pearson_, 810 F.3d at 210-12).) Plaintiff's arguments have merit.

In _Pearson_, "[t]he ALJ found [the claimant's] non-dominant arm could only occasionally reach upward," but for all three jobs cited by the VE, "the [DOT] list[ed] _frequent_ reaching as a requirement." _Pearson_, 810 F.3d at 210 (emphasis in original). The _Pearson_ court further noted that "[t]he [DOT] defines reaching as '[e]xtending hand(s) and arm(s) in any direction.'" _Id._ (quoting _Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles_, App'x C ("Physical Demands"), § 8 (U.S. Dep't of Labor 1993) ("SCO")). The court then observed: "Although the [DOT] does not expressly state that the occupations identified by the [VE] require frequent bilateral overhead reaching, the [DOT's] broad definition of 'reaching' means that they certainly _may_ require such reaching." _Id._ at 211 (emphasis in original). The court found the ALJ had failed to identify or resolve the apparent conflict and remanded the case. _Id._ at 211-12.

Here, as to reaching, the ALJ and the VE had the following exchange:

> [ALJ:]      What would the vocational impact be if we assume that the person is able to occasionally reach overhead with the dominant arm?
>
> [VE:]      This would continue to allow access to all samples that I've cited for the first [h]ypothetical, assuming unlimited use of the non-dominant upper extremity.
>
> [ALJ:]      And if the non-dominant is also occasionally reaching overhead, would that change your opinion?
>
> [VE:]      This will preclude the Warehouse Worker, however will continue to allow access to the Dish[ W]asher and the Janitor.

(Tr. 463-64.) During cross-examination of the VE by Plaintiff's attorney, this additional exchange occurred:

> [ATTY:]      If somebody is limited to occasional, not just overhead, but also reaching out in front of his body with both the dominant and non-dominant arms, would any of the job[s] that you've mention be available?
>
> [VE:]      No.  There are only a very small number of jobs which accommodate occasional use of both upper extremities.
>
> . . .
>
> [ALJ:]      . . . [H]as your testimony in this case been consistent with the [<u>DOT</u>]?
>
> [VE:]      It has been consistent.  <u>Any factor which is simply not addressed by the DOT are [sic] based on my training and experience</u>.

(Tr. 465-66 (emphasis added).)  A comparison of post-<u>Pearson</u> cases in this Court supports the conclusion that the ALJ here neither

sufficiently identified nor resolved the apparent conflict in question.

For example, in one recent case, the Court concluded that the ALJ adequately identified and resolved the apparent conflict:

The ALJ [] asked the VE whether th[e] three jobs [in question] would remain available if the ALJ altered the hypothetical to reflect no overhead reaching with the left, non-dominant upper extremity, and the VE responded that [all three] jobs would remain appropriate. The ALJ then inquired about the impact that amending the hypothetical to occasional reaching in all directions would have on the available jobs, and the VE eliminated [two] jobs, but testified as follows regarding the Telephone Solicitor job:

> [VE:]    The [T]elephone [S]olicitor . . . per the [DOT] lists occasional for both reaching and handling. It does not distinguish between . . . whether it's one [extremity], or the other, or bilateral. . . . But based on professional experience with that occasional, it does . . . [c]ertainly fall within the [DOT] description.

After cross-examination of the VE by [the p]laintiff's representative, the following exchange occurred between the ALJ and the VE:

> [ALJ:]   [I]s your testimony consistent with the [DOT]?
>
> [VE:]    Yes, Your Honor, and there is no conflict in any of my testimony with the [DOT]. I would just specifically state that for those matters that the [DOT], or the [SCO], its accompanying volume, do not address — those issues would be based on my professional experience. . . . The [DOT] does not make a differentiation between

21

> bilateral or unilateral use of limbs
> or any type of postural
> movements. . . . Also
> differentiating the types of
> reaching whether in any specific
> direction, it does not deal with
> that. So in those cases that I just
> mentioned, those issues with the
> testimony would be based upon my
> professional experience, but, again,
> no conflict with the [DOT].

> [T]he ALJ here resolved the apparent conflict between the
> DOT's listings for the three jobs in question reflecting
> frequent and occasional reaching, see DOT No. 249.587-018
> ("Document Preparer, Microfilming"), 1991 WL 672349; DOT
> No. 726.684-110 ("Touch-Up Screener, Printed Circuit
> Board Assembly"), 1991 WL 679616; DOT No. 299.357-014
> ("Telephone Solicitor"), 1991 WL 672624, and the VE's
> testimony that an individual unable to reach overhead
> could perform those jobs. As described above, the VE's
> testimony reflects that he expressly acknowledged that
> the DOT neither differentiated between unilateral and
> bilateral reaching, nor specifically addressed the
> direction of reaching involved and, thus, relied on his
> own professional experience to opine that an individual
> who could not reach overhead with the left, non-dominant
> arm could still perform all three of the jobs in
> question.

Allen v. Berryhill, No. 1:17CV277, 2018 WL 2025666, at *6 (M.D.N.C.

May 1, 2018) (unpublished) (internal citations omitted) (emphasis

added), recommendation adopted, slip op. (M.D.N.C. May 23, 2018)

(Biggs, J.).

    Conversely, in another case in this district, the ALJ and VE

conducted the following exchange:

> [ALJ]:    Has all of your testimony today been
>           consistent with your training, education, and
>           experience?

> [VE]:     It has, Your Honor, with somewhat outside
>           [sic] the [DOT] and the companion publications
>           just with the differentiating with the sit and
>           stand as well as the breakdown of reaching
>           right versus left. . . .  And that is
>           consistent with my 25 plus years of doing
>           [inaudible], talking with employers, doing
>           jobs, being in the industry.

Crouse v. Saul, No. 1:18CV269, 2019 WL 4015553, at *4 (M.D.N.C.

Aug. 26, 2019) (unpublished) (Peake, M.J.), recommendation adopted,

2019 WL 5783532 (M.D.N.C. Sept. 16, 2019) (unpublished) (Osteen,

Jr., J.).  Given that exchange, the Court distinguished Allen based

on the following rationale:

> . . . [T]he VE did not identify the specific conflict in
> question.  Instead, when queried, the VE stated that her
> testimony was "somewhat outside the [DOT] and the
> companion publications just with the differentiating with
> the sit and stand as well as the breakdown of reaching
> right versus left."  It is far from clear what this
> means.  While the quoted testimony appears to be an
> effort on the part of the VE to identify some general
> conflict between her testimony and the [DOT] regarding
> reaching, such a statement is simply too vague and
> ambiguous to fairly constitute an identification of the
> specific apparent conflict raised by Plaintiff here.  As
> a result, the Court cannot determine if the ALJ's step
> five finding is supported by substantial evidence.
>
> Nor was the VE's explanation for the unidentified
> reaching conflict susceptible to judicial review.  As
> noted, the VE apparently tried to reconcile the fact that
> her testimony was "somewhat outside the [DOT]" as to the
> "breakdown of reaching right versus left," by stating
> that it was "consistent with [her] 25 plus years of doing
> [inaudible], talking with employers, doing jobs, being in
> the industry."  Again, however, it is far from clear what
> all of this means.  There is no "breakdown" regarding
> "reaching right versus left" in the VE's testimony or in
> the ALJ's decision.  While a VE may resort to personal
> experience to explain why her opinion remains reliable
> despite an apparent conflict with the [DOT], see, e.g.,

23

> _Allen v. Berryhill_, No. 1:17CV277, 2018 WL 2025666, at *6
> (M.D.N.C. May 1, 2018) (Auld, M.J.), [recommendation]
> adopted[,] [s]lip [o]p. (M.D.N.C. May 23, 2018) (Biggs,
> J.), that explanation must itself be stated clearly
> enough to be susceptible to judicial review.

_Crouse_, 2019 WL 4015553, at *5 (some internal citations omitted).

In light of the above-quoted cases, the Court should find that the ALJ here neither sufficiently identified nor resolved the apparent conflict at issue. The VE's testimony, pieced together from direct and cross-examination, reflects that she believed that none of the three jobs she cited required more than occasional overhead reaching with the non-dominant arm, that the Dish Washer and Janitor jobs do not require more than occasional overhead lifting by both arms, and that none of the jobs could accommodate occasional, bilateral reaching both overhead and out in front. (See Tr. 463-65.) However, unlike in _Allen_, the VE never specifically acknowledged the apparent conflict between the _DOT_'s descriptions for those jobs as involving frequent or constant reaching in any direction and the hypothetical's restriction to occasional overhead reaching, stating only, generically, that "[a]ny factor which is simply not addressed by the DOT are [sic] based on my training and experience." (Tr. 466 (emphasis added).) Indeed, even in _Crouse_, where the VE recognized that her testimony remained "somewhat outside the [DOT] and the companion publications just with the differentiating with the . . . breakdown of reaching right versus left," _Crouse_, 2019 WL 4015553, at *4 (emphasis

24

added), the Court found the VE's testimony insufficient to identify and resolve the apparent conflict, id. at *5.

In short, the ALJ additionally reversibly erred by failing to identify and resolve the apparent conflict between the VE and the DOT regarding the reaching requirements of the jobs in question.

### 3. Function-by-Function Analysis

Plaintiff's third and final issue on review contends that "[t]he ALJ erred by failing to perform a function[-]by[-]function assessment of the contested functions of reaching and lifting when assessing the RFC" in violation of Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p"), and Mascio v. Colvin, 780 F.3d 632 (4ᵗʰ Cir. 2015). (Docket Entry 10 at 10 (bold font and single-spacing omitted).) In that regard, Plaintiff notes that Mascio requires remand "'where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" (Id. (quoting Mascio, 780 F.3d at 636).) According to Plaintiff, "[w]hile the ALJ included a limitation to only occasional overhead reaching with the dominant upper extremity in the RFC, he d[id] not explain why [Plaintiff] was no similarly limited to only occasional reaching in front of and across from his body." (Id. at 11 (citing Tr. 404) (internal citation omitted).)

25

Plaintiff further asserts that, "despite numerous notations of shoulder weakness, the ALJ d[id] not explain why he found [Plaintiff] capable of lifting up to 50 pounds as required for . . . medium work." (Id. at 12 (citing Tr. 404) (internal parenthetical omitted).) Plaintiff's assertions fall short.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that

determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636–37. Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," Mascio, 780 F.3d at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ's decision supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between his conclusions that Plaintiff's right shoulder impairment (A) qualified as severe (see Tr. 402) but (B) that it did not cause limitations greater than the lifting and carrying

requirements of medium work and occasional overhead reaching with the right (dominant) arm (see Tr. 404).

First, the ALJ's evaluation of the opinion evidence supports the RFC. In that regard, the ALJ noted that consultative physical examiner Dr. Ernest B. Eason found on examination that Plaintiff's "shoulders had normal contour, normal abduction and elevation, backward elevation of forty degrees, and normal internal and external rotation," and that "Dr. Eason's only diagnosis was [PTSD]." (Tr. 407; see also Tr. 319.) The ALJ afforded "significant weight" to Dr. Eason's "opin[ion] that [Plaintiff] had no functional impairment or impediment with the use of his hands, and that he could sit, balance, stand, walk, and comprehend." (Tr. 407 (emphasis added) (referencing Tr. 320).) The ALJ also accorded only "partial weight" to the state agency medical consultants, who found that Plaintiff "did not have any physical impairments," noting that the "consultants did not have an opportunity to conduct an in-person evaluation of [Plaintiff]." (Id. (referencing Tr. 87, 103).) In addition, the ALJ assigned "partial weight" to the Third Party Function Report completed by Plaintiff's wife that Plaintiff's impairments did not cause any limitations in "lifting, sitting, standing, walking, climbing stairs, squatting, bending, kneeling, reaching, or using his hands." (Tr. 409 (emphasis added) (referencing Tr. 210).)

28

Second, the ALJ's discussion of the medical evidence relating to Plaintiff's shoulder impairment makes clear that the ALJ gave Plaintiff the benefit of the doubt by including limitations to medium work and occasional, right-arm overhead reaching in the RFC. In that regard, the ALJ noted that:

- Plaintiff sought treatment for a shoulder injury in February 2010, prior to his alleged onset date, and Physician's Assistant Debra C. Holmes ("PA Holmes") diagnosed him with "right long head biceps tendon rupture, impingement of the right shoulder, and osteoarthritis of the [acromioclavicular] joint" (Tr. 406 (citing Tr. 846));

- PA Holmes noted that Plaintiff's condition improved but that "he still experienced some weakness," as well as that he had "not return[ed] to her for further treatment of his right shoulder until June 30, 2015 [his DLI]" (id.); and

- "On June 30, 2015[, Plaintiff] reported to [PA] Holmes that he was experiencing right shoulder weakness when pushing down, and that he was having difficulty shifting car gears and difficulty bathing and putting on a belt," but "[PA] Holmes observed that [Plaintiff] could easily get his hand behind his head" and "diagnosed him with a probable chronic rotator cuff tear of the right shoulder" (id. (emphasis added) (citing Tr. 846-49)).

The ALJ then provided the following analysis supporting his finding that Plaintiff could perform a reduced range of medium work with occasional overhead lifting with the dominant arm, notwithstanding a severe shoulder impairment:

> [Plaintiff] had a right shoulder injury in 2010, but the evidence shows that this improved and caused very little limitation until around June 2015. However, by the time of his [DLI] of June 30, 2015, the evidence did not show that it was causing a significant impairment. I find

29

that this injury would have affected how much [Plaintiff] could lift and carry, limiting him to medium work, and that he would have some limitation with his ability to reach.

(Tr. 410).) That analysis suffices.

Accordingly, Plaintiff's third assignment of error does not entitle him to reversal or remand.

### III. CONCLUSION

Plaintiff has established errors warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, to include obtaining the testimony of a VE to identify and resolve any apparent conflicts between the VE's testimony and the VE in accordance with SSR 00-4p and Pearson. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) should be granted in part (i.e., to the extent it request remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) should be denied.

                    /s/ L. Patrick Auld
                  **L. Patrick Auld**
              **United States Magistrate Judge**

April 21, 2020

30